O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMIM CHOWDHURY,<br><br>Petitioner,<br><br>v.<br><br>TODD M. LYONS *et al.*,<br><br><br><br>Respondents. | Case No.: 5:26-cv-01252-MEMF-E<br><br>**ORDER GRANTING IN PART PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION [DKT. NO. 1]** |

Before the Court is the Motion for Temporary Restraining Order and/or Preliminary Injunction filed by Petitioner Samim Chowdhury. Dkt. No. 1 ("Motion"). For the reasons stated herein, the Motion is GRANTED IN PART.

/ / /

/ / /

/ / /

/ / /

/ / /

1

I.    **Background**

A.  **Factual Background[1]**

Petitioner Samim Chowdhury is a native and citizen of Bangladesh. Motion at 5. In May 1993, he arrived in the United States without travel documents, and he was detained for a day, interviewed, and then released from custody. *Id.* He was placed in exclusion proceedings.[2] *Id.* at 5-6. He subsequently relocated to Los Angeles, California, and Chowdhury re-applied for asylum after first applying in 1994. *Id.* at 6. On May 7, 1999, an Immigration Judge denied his asylum application and granted him voluntary departure which was reaffirmed by the BIA on September 24, 2002. *Id.* Then, on December 19, 1998, Chowdhury married Redwana Chowdhury (née Rahman), a legal permanent resident, who later became a naturalized U.S. citizen in 2001. *Id.* at 6-7. Chowdhury and his wife have one daughter. *Id.* at 7-8. Chowdhury is the owner of a convenience store and car washing business, employing around a dozen people. *Id.* at 8.

On February 13, 2007, an Immigration Judge terminated proceedings to permit Chowdhury to apply for adjustment of status.[3] *Id.* at 7. On March 4, 2026, Chowdhury appeared for his scheduled adjustment of status interview before U.S. Citizenship and Immigration Services when he was detained by ICE agents at the end of his appointment. *Id.* Chowdhury is detained at the Adelanto ICE facility. *Id.*

B.  **Procedural History**

On March 17, 2026, Chowdhury filed a combined Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 and a Request for Temporary Restraining Order and/or Preliminary Injunction. *See* Motion. On March 18, 2026, the Court ordered the Respondents to file a response to the Motion by

---

[1] Unless otherwise indicated, the following factual background is derived from Chowdhury's Petition for Writ of Habeas Corpus and Motion for Temporary Restraining Order. Dkt. No. 1 ("Motion"). This Court is not, at this time, making a final determination as to the veracity of the facts stated therein.

[2] It appears that Chowdhury was then ordered excluded *in absentia*; he failed to appear for the relevant hearings and according to him, had no knowledge of them. Ex. B, Dkt. No. 14-2. According to a 2007 motion to reopen, he was represented in the exclusion proceedings by an attorney who was later convicted of fraud and disbarred, and, most importantly, did not keep him informed of the progress of his case. *Id.*

[3] It is unclear whether this was as a result of a favorable decision on the motion to reopen referred to above. *Id.*

2

March 20, 2026, at 5 PM. Dkt. No. 6. The Court's Order also ordered Chowdhury to file a Reply by March 23, 2026, at 5 PM. *Id.* On March 20, 2026, Respondents filed an Opposition. Dkt. No. 9 ("Opposition"). On March 23, 2026, Chowdhury filed a Reply. Dkt. No. 10 ("Reply").

On April 2, 2026, the Court held a hearing on the Motion. Dkt. No. 13. At the hearing, the Court ordered Respondents to file a supplemental declaration that: "(1) attaches the documents purportedly served on Petitioner when he was detained, (2) explains the specific basis for the declarant's knowledge that the documents were served . . . , and (3) explains the record before the Immigration Judge regarding Petitioner's prior alias and exclusion order." *Id.*

On April 6, 2026, Respondents filed a Supplemental Declaration with supporting exhibits. *See* Dkt. No. 14 ("Supplemental Decl."), 14-1 (supplemental exhibits). On April 8, 2026, Petitioner filed a Supplemental Reply. Dkt. No. 15 ("Supplemental Reply").

## II.   **Applicable Law**

### A.  **Preliminary Injunctions**

The analysis that courts must perform for temporary restraining orders and preliminary injunctions is "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839 (9th Cir. 2001). Federal Rule of Civil Procedure 65 sets forth the procedure for issuance of a preliminary injunction. *See* Fed. R. Civ. P. 65(b). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To qualify for injunctive relief, Plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood that he will suffer irreparable harm without an injunction; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20. This Court cannot grant the preliminary injunction "unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

The Ninth Circuit has held that injunctive relief may issue, even if the moving party cannot show a likelihood of success on the merits, if "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th

Cir. 2011). Under either formulation of the principles, preliminary injunctive relief should be denied if the probability of success on the merits is low. *See Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984) ("[E]ven if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits.").

### B. Habeas Petitions in the Immigration Detention Context

District Courts are "generally prohibit[ed]" from "entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out" certain provisions of the INA, found in 8 U.S.C. §§ 1221–1232. *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022). But "lower courts retain the authority to 'enjoin or restrain the operation of' the relevant statutory provisions 'with respect to the Motion of such provisions to an individual [noncitizen] against whom proceedings under such part have been initiated.' *Id.* (quoting 8 U.S.C. § 1252(f)(1)).[4] This Court, therefore, may grant relief in "individual cases." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481–82 (1999).

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court established that courts should treat a six-month period of detention as "presumptively reasonable." *Id.* at 700–01. It explained:

> After this 6–month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Respondents must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every [noncitizen] not removed must be released after six months. To the contrary, a [noncitizen] may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* at 701. In other words, trial courts considering an immigration detainee's habeas petition seeking release must first ascertain if the detainee has demonstrated good reason to believe that, in the reasonably foreseeable future, there is no significant likelihood of removal. Only then does the burden shift to the Respondents to rebut that showing.

---

[4] Where it does not change the meaning, this Court will endeavor to use the term "noncitizen" in place of alien, consistent with the practice of the United States Supreme Court. *See Avilez v. Garland*, 69 F.4th 525, 527 (9th Cir. 2023)

Once an immigrant has been "released under an order of supervision," the following rules govern. 8 C.F.R. § 241.13(i)(1). To "revoke an [noncitizen]'s release under this section and return the [noncitizen] to custody," the Service must "determine[] that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2). "Upon revocation, the [noncitizen] will be notified of the reasons for revocation of his or her release," and is entitled to an initial interview after the immigrant's return to custody to allow the immigrant to respond, submit evidence, or otherwise demonstrate that "there is no significant likelihood he or she be removed in the reasonably foreseeable future." *Id.* § 241(i)(3).

### III. <u>Discussion</u>

#### A. Chowdhury has demonstrated that he is entitled to a temporary restraining order pursuant to the *Winter* factors.

As discussed above, the standard for granting a temporary restraining order and a preliminary injunction are substantively identical. Given the urgency of this matter, this Court has only considered whether Petitioner is entitled to a temporary restraining order.

Petitioner argues four grounds upon which a temporary restraining order should be granted. First, Petitioner argues that he has been unlawfully re-detained in violation of 8 C.F.R. § 241.13(i) and 8 C.F.R. § 241.4(*l*). Motion at 9-10. Second, he argues that removal to Bangladesh is not significantly likely in the foreseeable future as required by *Zadvydas v. Davis*. *See* Reply at 2, 5-6. Third, he argues that his continued detention is unconstitutional under the Fifth Amendment and *Mathews v. Eldridge*. Motion at 12-13. And fourth, he argues that his arrest violates 8 U.S.C. § 1357(a)(2). *Id.* at 15. The Court applies the *Winter* factors to Chowdhury's claims below.

As a preliminary matter, the Court must address the facts underlying Chowdhury's detention. Although Chowdhury asserts that he was detained at an adjustment of status interview without any notice and without any showing of changed circumstances, Respondents dispute that. Respondents assert that Chowdhury is subject to an Exclusion Order and that he was served with a Form I-200 Administrative Arrest Warrant and I-205 Warrant of Removal the day he was detained. *See* Opposition at 2, 4. Respondents have failed to establish these basic facts even when given the opportunity to supplement the record. In support of these assertions, Respondents rely on two

declarations by ICE Deportation Officer Jesslyn Mendoza, and the exhibits thereto. *See* Dkt. No. 9-1; Supplemental Decl.; Dkt. No. 14-1. These materials are insufficient to rebut Chowdhury's assertions to the contrary.

First, with respect to the Exclusion Order, Respondent's materials appear to establish that the exclusion order they now seek to rely on was issued *in absentia* when Chowdhury was represented by an attorney who did not keep Chowdhury informed of his case, and was later convicted of fraud and disbarred in part based upon his shoddy and fraudulent representation of immigration clients. *See* Ex. B, Dkt. No. 14-1. The due process concerns with relying upon such an order appear legion, and it is notable that while Respondents assert that Chowdhury's motion to reopen was denied, they do not explain the basis for the denial or attach the decision. *See* Dkt. No. 14-1.

Second, whereas Respondents explain in their Opposition that the 2026 detention was justified because Chowdhury had apparently obtained immigration benefits in one name while under an exclusion order in another name, *see* Opposition at 2, the documents appear to corroborate Chowdhury's position that he has been on some form of release since at least 2007 (*after* the other name would have been revealed) and so circumstances have not changed so as to justify his detention.

Third, Respondents' exhibits contain various *statements* that various documents were served, but none of the documents contain these statements *under penalty of perjury*. The declarant, Officer Mendoza, has no personal knowledge of service, and—even when permitted to supplement the record—the Respondents did not provide a declaration under penalty of perjury from the individuals who purportedly served these documents. *See* Supplemental Decl.; Exs. C, D, E, Dkt. No. 14-1.

Therefore, it appears the facts are disputed as to whether Chowdhury was provided any notice and whether any circumstances appear which would justify his detention at this time.

          i.   The first *Winter* factor, likelihood of success on the merits, is met.

Chowdhury argues that he is entitled to a release order because the Government violated both due process and the INA by re-detaining him without notice and an opportunity to be heard, his removal to Bangladesh is not reasonably foreseeable, and his arrest was in violation of Section 1357(a)(2). Motion at 9-15; Reply at 5-6. For the reasons below, the Court finds that Petitioner is

likely to succeed on his Fifth Amendment Due Process claim under the *Mathews v. Eldridge* balancing test, so the first *Winter* factor is met. *See* Motion at 12-13.

"'The Fifth Amendment entitles [noncitizens[5]] to due process of law' in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). Accordingly, immigration detainees pending removal are "entitled to notice and opportunity to be heard 'appropriate to the nature of the case.'" *Id.* (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).[6]

Due process claims have two elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections. *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). Although the Ninth Circuit has not defined the contours of what procedural safeguards are due to noncitizens facing re-detention following release from ICE custody, the Supreme Court has outlined three factors to be considered in determining what amount of due process is appropriate: (i) the private interest that will be affected, (ii) the risk of an erroneous deprivation and the value of additional procedures sought, and (iii) the government's interest, including the burdens associated with the additional procedures sought. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). The Court finds that these three factors

---

[5] Where it does not change the meaning, this Court endeavors to use the term "noncitizen" in place of alien, consistent with the practice of the Supreme Court. *See Avilez v. Garland*, 69 F.4th 525, 527 (9th Cir. 2023) ("[U]se of the term noncitizen has become a common practice of the Supreme Court . . . . [In addition,] [t]he word alien can suggest 'strange,' 'different,' 'repugnant,' 'hostile,' and 'opposed,' Alien, Webster's Third New International Dictionary 53 (2002), while the word noncitizen, which is synonymous, *see* Alien and Noncitizen, American Heritage Dictionary of English Language 44, 1198 (5th ed. 2011), avoids such connotations. Thus, noncitizen seems the better choice.").

[6] In light of *J.G.G.*, it appears that the applicable regulations, namely 8 C.F.R. § 241.13(i)(3) and 8 C.F.R. § 241.4(*l*)(1), are the means by which ICE has determined it will meet the due process rights of putative detainees. Under the former, an immigrant who has been released under an order of supervision "will be notified of the reasons for revocation of his or her release." 8 C.F.R. § 241.13(i)(3). Promptly after the immigrant's return to custody, "the Service will conduct an initial informal interview . . . to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id.* At that interview, the noncitizen "may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." *Id.* "The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." *Id.* Similarly, under Section 241.4(*l*)(1), noncitizens are entitled to "prompt[]" notification "of the reasons for revocation of his or her release or parole." 8 C.F.R. § 241.4(*l*)(i).

weigh in favor of finding that Chowdhury is entitled to the additional procedural safeguards requested—namely, a hearing. *See* Motion at 14.

With respect to the first factor, Chowdhury has a liberty interest in remaining out of custody. *See Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects.").

With respect to the second factor, Chowdhury has demonstrated that he is likely to succeed on showing a risk of erroneous deprivation of his liberty interest. Chowdhury contends that there is a serious risk of erroneous deprivation because his "release after his initial arrival was premised on Respondents' determination that he was not a flight risk or a danger to the community." Motion at 13. Specifically, he contends that he was "re-detained . . . without providing contemporaneous written notice explaining the basis for revocation, without identifying any changed circumstances, and without affording any meaningful opportunity to respond." Reply at 4.

Respondents contend that they had the authority and discretion to re-detain him because of his prior exclusion order, and his re-detention was procedurally proper. *See* Opposition at 3-4. But at the hearing, the Court ordered Respondents to file a supplemental declaration that: "(1) attaches the documents purportedly served on Petitioner when he was detained, (2) explains the specific basis for the declarant's knowledge that the documents were served . . . , and (3) explains the record before the Immigration Judge regarding Petitioner's prior alias and exclusion order." Dkt. No. 13. The Court finds that Respondents have not rebutted Petitioner's allegations of "procedural deficiencies," and have not shown he was given notice and an opportunity to be heard regarding his re-detention. *See* Supplemental Reply at 1-3.

Respondents' declarant does not testify that she had personal knowledge that Petitioner was served with the I-200 Administrative Arrest Warrant and I-205 Warrant of Removal, *see* Mendoza Decl. ¶ 17, Dkt. No. 9-1, rather, Respondents' declarant only testified that she provided "this declaration based on the best of [her] knowledge, information, belief, and reasonable inquiry," and that the service of the "arrest warrant and warrant of removal *was documented*" on the I-213 Form, *see* Supplemental Decl. ¶¶ 3, 6 (emphasis added). The declarant's knowledge is based solely upon the I-213 Form, *see id.*, and Respondents do not obtain testimony from Officer Segundo Leon, the

officer who prepared the I-213 Form, Officer Medrano, the officer who prepared Petitioner's Warrant of Removal, or Officer Joven, the officer who prepared Petitioner's Warrant of Arrest, *see* Exs. C, D, E, Dkt. No. 14-1; *see also* Supplemental Reply at 2-3.

Moreover, Respondents' declarant testified in her Supplemental Declaration that "DHS is not in a position to state what the Immigration Judge was aware of, but a review of the Petitioner's records with DHS indicates that nothing was filed with the Immigration Judge that would have informed him of the second identity prior to 2007." Supplemental Decl. ¶ 4. This therefore does not make clear that Petitioner's continued release from custody was in error—i.e., prior to the revelation that he was actually subject to an Exclusion Order under another name. *See* Opposition at 2; Mendoza Decl. ¶ 13.

Accordingly, the Court finds that Respondents' Supplemental Declaration does not sufficiently address the Court's questions or rebut Petitioner's contentions—supported by a sworn declaration by his wife, *see* Chowdhury Decl. ¶¶ 7-9, Dkt. No. 1-1—regarding inadequate procedural due process. Thus, Petitioner is likely to succeed in showing that he would likely be *erroneously* deprived of his rights without a hearing.

With respect to the third factor, Chowdhury is likely to succeed in showing that the Government's interest—and, in particular, the burden associated with the requested hearing—would be minimal.

For these reasons, Petitioner has shown a likelihood of success on his constitutional claim. Accordingly, the first *Winter* factor is met.[7]

> ii.  The second *Winter* factor, a demonstrated likelihood of irreparable harm absent an injunction, is met.

To establish the second *Winter* requirement, Petitioner must demonstrate a likelihood that he will suffer irreparable harm without a temporary restraining order. This Court finds that the second *Winter* requirement is met.

---

[7] Because Petitioner is likely to succeed on his constitutional due process claim, the Court need not address Petitioner's 8 C.F.R. § 241.13(i) and 8 C.F.R. § 241.4(*l*), *Zadvydas v. Davis*, or 8 U.S.C. § 1357(a)(2) claims.

As a threshold matter, Petitioner has "established a likelihood of irreparable harm by virtue of the fact that [he is] likely to be unconstitutionally detained for an indeterminate period of time." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). The Government's discretion to issue removal orders is not at issue here. Instead, Petitioner argues that the Government has not complied with the legal process that is due to him as a detained noncitizen. And "it is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Moreover, Petitioner's ongoing detention of indeterminate length inherently risks him irreparable harm, as it is not clear when he will be processed, released, or removed. *See* Motion at 8. Thus, as this Court has already found that Petitioner has a sufficient likelihood of success on the merits of his challenges to his current detention—in part based upon Petitioner's constitutional rights—this Court finds the second *Winter* factor is met. *See* Opposition at 9.

### iii. The third and fourth *Winter* factors, balancing the equities and considering the public interest, are met.

When, as here, the nonmoving party is a governmental entity, the last two *Winter* factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). This Court thus considers the third and fourth factors—whether the "balance of equities" is in Petitioner's favor and whether an injunction is in the public interest—jointly. *All. for the Wild Rockies*, 632 F.3d at 1135.

The balance of equities appears to tilt in Petitioner's favor. It is true that the Government has a strong interest in the enforcement of federal immigration law. *See* Opposition at 9. But the Government "cannot reasonably assert that it is harmed in any legally cognizable sense" by being compelled to follow the law. *Zepeda v. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983). To that end, "[a]ny additional administrative costs to the government are far outweighed by the considerable harm to plaintiffs' constitutional rights in the absence of the injunction." *Hernandez*, 872 F.3d at 996. "Faced with such a conflict between [the minimal cost to implement additional due process safeguards] and preventable human suffering," this Court finds ample reason to conclude that "the balance of hardships tips decidedly in plaintiffs' favor." *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983). This is particularly true given that Respondents do not argue otherwise, nor do they allege that the

issuance of a TRO in this matter would cause them harm at all. And, for related reasons, an injunction is in the public interest. "Public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). Respondents do not contend that this Court should find otherwise. In sum, the third and fourth *Winter* factors are met here.

### B. A release order is the appropriate relief.

Respondents argue that ordering Petitioner's immediate release is not an appropriate form of relief. *See* Opposition at 5-6. For the reasons below, the Court determines that Petitioner is entitled to a release order.

First, Petitioner's prompt release is the remedy that will best return Petitioner to the status quo and restore his position as it was prior to the detention that Petitioner contends was in violation of his constitutional and statutory protections. Motion at 18. The purpose of a temporary restraining order is "to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction." 11A Wright & Miller's Federal Practice & Procedure § 2951 (3d ed.). Though the Ninth Circuit has not opined on the matter of scope of preliminary relief in this specific context, other courts in this Circuit have taken a similar approach. *See, e.g.*, *F.M.V. v. Wofford*, No. 1:25-CV-01381, 2025 WL 3083934, at *7 (E.D. Cal. Nov. 4, 2025).

Second, in any event, this Court permits the Government to remedy the procedural deficiency at issue through its Orders issued *infra*. This Court's resolution of this Motion—to order Respondents to release Petitioner from custody and not re-detain him absent compliance with due process and his legal protections—in effect permits the Government to follow the appropriate steps to reattempt Petitioner's detention.

For those reasons, and seeing no argument from Respondents to the contrary, a release order is the appropriate form of relief.

/ / /

/ / /

/ / /

/ / /

11

**IV.    Conclusion**

For the foregoing reasons, the Motion is GRANTED IN PART. Chowdhury's request for a temporary restraining order is GRANTED. This Court will rule on the request for a preliminary injunction following the Order to Show Cause hearing described below.

1. Respondents are ORDERED to release Petitioner from custody (and return to him his personal belongings) within forty-eight (48) hours,[8] and they may not re-detain him without compliance with 8 C.F.R. § 241.4(*l*)(1), 8 C.F.R. § 241.13(i), and 8 U.S.C. § 1231;

2. Respondents are enjoined from relocating Petitioner outside of the Central District of California pending final resolution of this matter;

3. Respondents shall not impose any release restrictions on Chowdhury, such as electronic monitoring, unless deemed necessary at a future pre-deprivation bond hearing[9];

4. This Court orders Respondents to show cause, in writing, as to why a preliminary injunction should not issue.

    a. Respondents' brief is due at 5 PM on Friday, April 17, 2026. Petitioner may file a response brief by Tuesday, April 21, 2026.

    b. The parties may stipulate to a different briefing schedule via joint stipulation filed by 5 PM on Wednesday, April 15, 2026. Should the parties wish to extend either briefing deadline, the parties should also stipulate that this

---

[8] This Court understands, based on Respondents' representations from hearings in similar immigration habeas cases, that Respondents believe that forty-eight hours is a reasonable amount of time to effectuate release.

[9] Restraints not shared by members of the public renders an individual in custody within the meaning of 28 U.S.C. § 2241. *See Hensley v. Municipal Court, San Jose Milpitas Judicial Dist., Santa Clara County, California*, 411 U.S. 345, 351 (1973) (holding that a person is in custody if the person "is subject to restraints 'not shared by the public generally' " and the person's "freedom of movement rests in the hands of state judicial officers"); *Jones v. Cunningham*, 371 U.S. 236, 238-39 (1963) (finding that the "chief use of habeas corpus has been to seek the release of persons held in actual, physical custody in prison or jail. Yet English courts have long recognized the writ as a proper remedy even though the restraint is something less than close physical confinement"). As such, prospective release restrictions, such as electronic monitoring constitute liberty constraints which do not afford petitioners complete relief.

temporary restraining order may remain in effect (without converting to a preliminary injunction) through this Court's decision on the preliminary injunction.

    c.  The parties' briefing on the preliminary injunction should address whether the granting of this TRO renders the PI request, and the habeas petition itself, moot.

5. The parties shall meet and confer and file a joint status report regarding the Respondents' compliance with this Order by Wednesday, April 15, 2026.

IT IS SO ORDERED.

Dated: April 13, 2026

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge